UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.:08-cv-1091(DWF/AJB)

Jonathan Zean,

      Plaintiff,

v.

U.S. Bancorp d/b/a U.S. Bank National Association, Unifund CCR Partners, Experian Information Solutions, Inc.,

      Defendants.

PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

This case stems from Defendants' endless pursuit and combined efforts to collect a debt never owed by Plaintiff, culminating in the filing of a lawsuit against Plaintiff by Defendant Unifund and its subsequent verification of the disputed debt to Experian and Trans Union. The evidence shows that Unifund had good reason to doubt that the disputed debt belonged to Plaintiff, even before Unifund received notice from the credit reporting agencies of Plaintiff's dispute, but regardless, it chose to verify the disputed debt as Plaintiff's in violation of 15 U.S.C. § 1681s-2(b).

Plaintiff's claims against Unifund are not defeated by any alleged deficiency in his damages and Plaintiff can show that based on Unifund's own testimony, in addition to other evidence, that its actions were willful, and Plaintiff's state law credit defamation claim is not preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

("FCRA"). Therefore, Unifund's motion for partial summary judgment should be denied in its entirety.

## FACTS

### I. Factual Background

Plaintiff never owed a debt to U.S. Bank. (Lyons Aff. ¶2, Ex. A, Deposition of Jonathan Zean dated March 4, 2009 ( "J. Zean Dep.") at 7:8-9:2.)  None of the defendants have ever produced anything to say otherwise.  Plaintiff was added to his brother's U.S. Bank credit card, account number ending in 3680, as an "authorized user" shortly after Plaintiff immigrated to this country from Liberia in 2001. *Id.*; *see also* Lyons Aff. ¶3, Ex. B, Deposition of Samuel Zean dated March 4, 2009 ("S. Zean Dep.") at 10:22-11:21. However, Plaintiff never received a card, never made any purchases, and never made any payments on the U.S. Bank card. (J. Zean Dep. 8:6-9:2.)   When Plaintiff's brother, Samuel Zean, realized U.S. Bank was listing Plaintiff as a joint account holder, he made several attempts to have Plaintiff's name removed from the account. (S. Zean Dep. 20:19-23, 21:25-22:5, 23:22-24:9.)   U.S. Bank refused to do so, however, even after it admittedly could not provide evidence that Plaintiff was a joint account holder in response to Samuel's request for documentation in 2004. *Id.*  Samuel Zean filed bankruptcy in 2005, at which point U.S. Bank began to aim its collection efforts at Plaintiff for the entire balance of the account. (S. Zean Dep. 21:3-14.)

Despite its lack of documentation tying Plaintiff to the account, U.S. Bank sold the account to a collection agency, Defendant Unifund in June 2007. (Lyons Aff. ¶4, Ex. C, Deposition of Autumn Hopkins dated May 14, 2009 ("Hopkins Dep.") at 115:10-25.)

2

On or about December 11, 2007, Unifund hired and instructed Como Law Firm to collect the bogus debt for Unifund. Como Law Firm sent Plaintiff a collection letter on December 11, 2007. (Lyons Aff. ¶9, Ex. H.) On January 7, 2008, Como Law Firm filed suit on behalf of Unifund against Plaintiff. *Id.* at 80; (see also Lyons Aff. ¶10, Ex. I.) Como Law Firm was advised that the account was disputed by the Plaintiff on January 14, 2008. *Id.* at 86-96; (see also Lyons Aff. ¶11, Ex. J.) On January 15, 2008, Como Law Firm dismissed the Complaint without prejudice. (Lyons Aff. ¶12, Ex. K.)

Plaintiff's Experian and Trans Union credit reports reflected delinquent and derogatory accounts as reported by both U.S. Bank and Unifund for the same disputed account, sharing the same account number ending in 3680 that belonged to Plaintiff's brother, Samuel. (J. Zean Dep. 149:11-17.) On January 28, 2008 Plaintiff sent Trans Union and Experian each a dispute letter in accordance with Section 1681i stating the accounts did not belong to him. (Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0057-0061; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0049-0054.)

On January 31, 2008, Experian sent Unifund notice of Plaintiff's dispute in the form of an ACDV (Automated Consumer Dispute Verification), stating the Plaintiff was disputing ownership of the account. (Lyons Aff. ¶15, Ex. N, Deposition of Teresa Iwanski dated April 30, 2009 ("Iwanski Dep.") at 144:24-145:12; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079.) Unifund responded to Plaintiff's dispute by sending an ACDV to Experian on February 11, 2008, wherein it stated "01-account information is accurate," and verified the account as belonging to Plaintiff. (Iwanski Dep. 149:6-9; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079.) Unifund

3

did not update the account as "disputed" in the "Consumer Compliance Code" box in the ACDV it sent to Experian on February 11, 2008. (Iwanski Dep. 146:11-147:3; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079, 0033-34.)

On January 31, 2008, Trans Union sent Unifund notice of Plaintiff's dispute in the form of an ACDV, stating Plaintiff was disputing ownership of the account. (Lyons Aff. ¶16, Ex. O, deposition of Eileen Little dated June 4, 2009 ("Little Dep." at 6:19-7:19; Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0071.) Unifund responded to Plaintiff's dispute by sending an ACDV to Trans Union on February 14, 2008, wherein Unifund verified the account as belonging to Plaintiff, and failed to update the account as "disputed by consumer." (Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0071-0073.)

Plaintiff filed this action on April 17, 2008 alleging violations of the Fair Debt Collection Practices Act, Fair Credit Reporting Act, and Credit Defamation. Specifically, Plaintiff alleged Defendant Unifund: 1) violated 15 U.S.C. § 1681s-2(b)[1] by failing to conduct a reasonable investigation in February 2008 with respect to the disputed information contained in his Experian and Trans Union credit reports and failed to indicate that Plaintiff disputed the Unifund account; 2) violated 15 U.SC. § 1692e(8) by failing to communicate the account as disputed; and 3) defamed Plaintiff by communicating to several parties, including credit reporting agencies, that Plaintiff owed

---

[1] Defendant's Memorandum incorrectly states that Plaintiff claims Unifund violated 15 U.S.C. § 1681i. *See Doc. No. 30.* Plaintiff's Complaint actually alleges Unifund violated 15 U.S.C. § 1681s2-b, which governs investigations by data furnishers. *See Doc. No. 1.*

4

a debt when it knew or should have known the debt was not Plaintiff's obligation.[2]

Plaintiff's claims against Unifund are narrow and implicate only the time period of late January or early February 2008, the time when it received Plaintiff's disputes from the credit reporting agencies, up through the date on which Unifund finally removed the account from Plaintiff's credit report.[3] Plaintiff's FCRA damages against Unifund are based upon its failure to investigate his dispute, failure to report the account as disputed, and the continued reporting of a debt that clearly did not belong to him. Plaintiff does not allege Unifund's actions caused him any credit denials – Plaintiff, who had known for some time that his credit reports contained derogatory information that had caused him prior credit denials, did not apply for credit during the relevant time period. Rather, Plaintiff's FCRA damages were in the form of emotional distress that resulted from Unifund's conduct in February 2008 and onward, a time period in which Defendant Unifund did not question Plaintiff about or cover during his deposition.

## II. Overview Of The FCRA And The Dispute Process

The FCRA was prompted by "congressional concern over abuses in the credit reporting industry." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). It is

---

[2] Defendant has not moved for summary judgment on Plaintiff's FDCPA claim despite the opportunity to do so in conjunction with its movement for summary judgment on all other claims. Because there is no genuine issue of material fact that Defendant failed to communicate the Unifund debt as disputed to the credit reporting agencies in violation of 15 U.S.C. § 1692e(8), Plaintiff requests that the Court grant summary judgment *sua sponte* in Plaintiff's favor on his FDCPA claim. *See Microsoft Corp. v. Ion Technologies Corp.*, 484 F.Supp.2d 955, 964 n. 9 (D.Minn.2007) (affirming district court's power to enter summary judgment *sua sponte*).

[3] It appears the tradeline was finally deleted in July 2008. (J.Zean Dep. 62:2-11.)

designed to protect consumers against

> "the trend toward...the establishment of all sorts of computerized data banks [that place a consumer] in great danger of having his life and character reduced to impersonal 'blips' and key punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable."

*Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir. 2000) (*citing* 116 Cong.Rec. 36570). Like other portions of the Consumer Credit Protection Act of 1968, the FCRA is to be liberally construed in favor of the consumer. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995).

The FCRA imposes obligations on credit reporting agencies and data furnishers. One of the most critical protections afforded by the FCRA is the consumer's right to dispute errors in his or her credit report, which imposes additional duties upon data furnishers once they receive notice of a dispute from a credit reporting agency. The congressional intent behind enacting the dispute process within the FCRA, and its overall importance in effectuating the purpose behind the FCRA as a whole, was stated by Senator William Proxmire:

> It would be unrealistic to expect credit reporting agencies to be absolutely correct on every single case. But it seems to me that consumers affected by an adverse credit rating do have a right to present their side of the story and to have inaccurate information expunged from their file. Considering the growing importance of credit in our economy, the right to fair credit reporting is becoming more and more essential. We certainly would not tolerate a Government agency depriving a citizen of his livelihood or freedom on the basis of unsubstantiated gossip without an opportunity to present his case. And yet this is entirely possible on the part of a credit reporting agency.

115 Cong. Rec. 2412 (1969).

Section 1681s-2(b)(1) requires furnishers to determine whether disputed information is incomplete or inaccurate. "In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information but also for omissions that render the reported information misleading." *Saunders v. Branch Banking and Trust Company of Virginia*, 526 F.3d. 142, 148 (4th Cir.2008).

## ARGUMENT

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c). In deciding a motion for summary judgment, the evidence of the non-moving party must be believed to be true, all doubts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999). So long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference is to believe, and summary judgment is not appropriate. *Id.* at 552. A genuine issue of material fact exists when the evidence before the court is such that a reasonable person could return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-252 (1986).

### II. UNIFUND'S CONDUCT CAUSED PLAINTIFF EMOTIONAL DISTRESS.

**A. Actual Damages Are Compensable Under The FCRA.**

To obtain an award for actual damages, a plaintiff need only present evidence showing "a causal relation between the violation of the statute and the loss of credit, *or some other harm...*" *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (emphasis added). "Actual damages" include damages for humiliation, mental distress or injury to reputation and credit worthiness, even if the consumer has suffered no out-of-pocket losses. *Gohman v. Equifax Information Services, LLC.*, 396 F.Supp.2d 822, 828 (D.Minn.2005), *citing Cousin*, 246 F.3d 359 n. 15 (5th Cir.2004); *see also Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (affirming emotional distress damages are available for FCRA violations); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th Cir.1976) (the "much maligned rule" precluding recovery in tort for mere mental pain and anxiety is inapplicable to the FCRA); *Graham v. CSC Credit Services, Inc.*, 306 F.Supp.2d 873, 880 (D.Minn.2004) (finding the consumer's testimony regarding his frustration, anxiety, and humiliation throughout the ordeal raised a genuine issue of material fact regarding whether he suffered emotional distress damage); *Scheel-Baggs v. Bank of America*, 575 F.Supp.2d 1031, 1043 (W.D.Wisc.2008) (finding the consumer's own testimony describing various symptoms and explanation of why she felt humiliated was not necessarily overwhelming but sufficient to raise a genuine issue of material fact on damages); *McKeown v. Sears Roebuck & Co.,* 335 F.Supp.2d 917, 932-34 (W.D.Wisc.2004) (denying summary judgment on actual damages claim of mental distress, loss of sleep, nervousness and injury to reputation, work, family and sense of well being.); *Kronstedt v. Equifax Information Solutions*, 2001 WL 34124782 *10 (W.D.Wisc.2001); *Bach v. First Union Nat'l Bank*, 149 Fed.Appx. 354, 361-62 (6th

8

Cir.2005) (holding damages for emotional distress based on shame, embarrassment, and anger available to FCRA plaintiff). A consumer may also be awarded damages related to the difficulty in fixing his credit history regardless of whether the erroneous information was published to a third party, when a "party experiences a significant frustration and anxiety brought on by failed attempts to have the errors corrected." *McKeown*, 335 F.Supp.2d at 933, *citing Cousin*, 246 F.3d at 369.

### B. Plaintiff Has Produced Sufficient Evidence Of Actual Damages.

### i. Evidence of Emotional Distress

Plaintiff explained his emotional distress caused by Defendant's failure to reasonably investigate his disputes with specificity in his affidavit.[4] (Lyons Aff. ¶6, Ex. E, Affidavit of Jonathan Zean ("Zean Aff."). Therein, Plaintiff who came to this country from war-torn Liberia to make a better life and live the "American Dream," described how Defendant's actions in part made that impossible. *Id.* at ¶2. He described the anger, frustration, and hopelessness he felt after he obtained the credit reporting agencies' February 2008 investigation results and learned that despite all of his efforts and hiring an attorney, Unifund persisted in reporting the debt as his nevertheless. *Id.* at ¶2-¶5. He feared further legal action on the debt was impending against him based upon Unifund's verification to the credit reporting agencies. *Id.* He could not sleep and lay awake at

---

[4] Defendant did not question Plaintiff about his emotional distress caused by Unifund's actions during his deposition. All questions asked of Plaintiff related to his emotional distress were tied to US Bank and no inquires were made about the emotional distress he experienced following Unifund's verification of the debt in February 2008, when Plaintiff's FCRA claim accrued. For these reasons, Plaintiff has provided an affidavit to supplement his deposition testimony upon which Defendant heavily, yet erroneously, relies.

night completely consumed by his hopelessness and fear of what would happen in the future. *Id.* at ¶6.  He felt ashamed that he could not provide for his family and that he had to continue to ask permission to use his wife's credit card since he could not apply for his own out of fear of rejection and embarrassment after realizing Unifund was not going to change its stance. *Id.* at ¶4-¶5.  He avoided applying for home loans and constantly fought with his wife as she hounded him to fix the problem. *Id.*  Shortly after receiving the February 2008 results, Plaintiff and his wife fought so badly about the Unifund issue that they did not speak for a week because she did not believe he was being aggressive enough in fixing his credit report. *Id.* at ¶5.  Plaintiff also describes the humiliation he felt when a prospective employer viewed his credit report, and he had to obtain a letter from his attorney explaining the situation before they would offer him employment. *Id.* at ¶8.  Plaintiff's affidavit alone is enough, and on summary judgment raises a genuine issue of material fact regarding whether he suffered emotional distress damages. *See Bakker*, 152 F.3d at 1013; *United States v. Balistreri*, 981 F.2d 916, 932 (7th Cir.1992); *see e.g. Lust v. Sealy, Inc.*, 383 F.3d 580, 589 (7th Cir. 2004); *Bach*, 149 Fed.Appx. at 361-62 (concluding that consumer's own testimony of shame, embarrassment, and anger was sufficient evidence of emotional distress in claim for actual damages under FCRA).

In addition to his own affidavit, Plaintiff has provided evidence through the affidavits of his wife[5] and brother corroborating Plaintiff's emotional distress claims. Plaintiff's wife, Gloria Zean, described the initial shock that the February 2008

---

[5] This witness was disclosed in Plaintiff's Rule 26a(1) Initial Disclosures but Defendant chose not to depose her.

verification had on Plaintiff, how he could not sleep, how they argued over his inability to correct his credit report, how her typically calm husband was angry and shouted, how he worried that Unifund was still pursuing him and intended to take further legal action, his confusion and frustration with the credit reporting system, and the shame and hopelessness Plaintiff felt in not being able to help his family realize the American Dream they came to this country to pursue. (Lyons Aff. ¶8, Ex. G, Affidavit of Gloria Zean.)

Samuel Zean, Plaintiff's brother, described Plaintiff as panicked and angry when he realized Unifund was not going to correct his credit report, and stated that Plaintiff often burst into anger and hung up on him when they would discuss the Unifund debt that remained on his credit report, and that Plaintiff told him he had trouble sleeping and appeared depressed. (Lyons Aff. ¶7, Ex. F, Affidavit of Samuel Zean.)

The affidavits of Plaintiff and his family members are sufficient to raise a genuine issue of material fact as to Plaintiff's emotional distress that resulted from Unifund's failure to reasonably investigate his dispute and its continued reporting of the debt that did not belong to him. Plaintiff does not have to produce evidence of seeking medical attention or physical symptoms. *Graham*, 306 F.Supp.2d at 880.

Defendant's argument to the contrary, that Plaintiff's emotional distress damages claims must fail because he "must prove that he or she suffered physical impact" is without merit and against the weight of authority in the Eighth Circuit, and it is hard to imagine any FCRA plaintiff that would ever meet the heightened standard based upon the "zone of danger" test pleaded by Defendant. In the *Gottshall* case, cited by Defendant,

the Court found the "zone of danger" test was appropriate and "*consistent with FELA's broad remedial goals and with the statute's purpose of alleviating the physical dangers of railroading.*" *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 2400 (1994) (emphasis added). Clearly, the standard used by courts in FELA tort-based cases is completely inapplicable here as the remedial purposes behind the statutes are totally different, and the FCRA was not designed to protect consumers from "physical dangers" posed by the credit reporting industry. Rather, the FCRA was designed to protect every day consumers from other types of "non-physical" harm such as credit denials, emotional distress and invasions of privacy that would not necessarily manifest themselves in serious medical or disabling conditions requiring medical or psychological treatment. In any event, Plaintiff has provided evidence in the form of affidavits that show he suffered from anger, anxiety, fear, and other negative feelings that manifested in sleep deprivation and arguments with his family members, all of which are sufficient facts for a jury to determine whether or not Plaintiff suffered emotional distress.

### ii. Evidence of Out of Pocket Damages

Defendant incorrectly states in its memorandum that Plaintiff has not presented any evidence of out-of-pocket losses caused by Unifund. Doc. No. 30 at p. 12-13. However, Plaintiff has provided evidence of out-of-pocket losses in response to discovery requests. (Lyons Aff. ¶17, Ex. P.) In response to Interrogatory No. 22 from Experian (who is no longer a party to this case), requesting that Plaintiff describe all of his actual damages, Plaintiff stated that he had spent $22.96 on copies and postage to send certified dispute letters, $5,000 to pay the Attorney Retainer fee, and additional money on gas and

mileage expended to meet with his attorney regarding this case. *Id.* (see also Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU0061; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0053, copies of certified mail receipts.)

## III.   DEFENDANT UNIFUND'S ACTIONS WERE IN WILLFULL NONCOMPLIANCE OF THE FCRA.

### A. Statutory And Punitive Damages Are Available Under The FCRA For Knowing And Reckless Violations.

A plaintiff may recover statutory damages up to $1,000 as well as punitive damages if he can show that a credit reporting agency ("CRA") or data furnisher willfully failed to comply with the Fair Credit Reporting Act. 15 U.S.C. § 1681n(a).  A consumer is entitled to punitive damages, even in the absence of actual damages, if the data furnisher or CRA willfully failed to comply with the FCRA. *See* 15 U.S.C. § 1681n(2); *Bakker*, 152 F.3d at 1013, *citing Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987). Willful noncompliance occurs when a defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Bakker*, 152 F.3d at 1013.  Plaintiff need not show malice or evil motive to prove willfulness under the Act. *Id. citing Cushman v. Trans Union Corp.,* 115 F.3d 220, 226-27 (3rd Cir.1997).  Willfulness in the civil context is not synonymous with the requirement of intent in criminal cases, and "[w]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but <u>reckless</u> ones as well." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2208 (2007) (emphasis added); *see Apodaca v. Discover Financial Services, et al.*, 417 F.Supp.2d 1220, 1229 (stating that "requiring FCRA plaintiffs to prove the

13

defendant actually knew that it was violating the law would 'create preverse incentives' for credit reporting agencies to pursue a policy of deliberate ignorance of the law in order to avoid liability for punitive damages.").

**B. Unifund Willfully Violated Section 1681s-2b by Failing to Conduct a Reasonable Investigation and by Failing to Update the Account as Disputed.**

On or about January 17, 2008, prior to Plaintiff's dispute to the credit reporting agencies in February 2008, Defendant was advised by its attorney, Como Law Firm, that Plaintiff disputed his status as a joint account holder on the US Bank card debt Unifund was attempting to collect.  (Hopkins Dep. 55:17-56:16.)  Defendant claims the Unifund debt was "flagged" as disputed in Defendant's internal system and the lawsuit Defendant had filed against Plaintiff in an attempt to collect the debt was dismissed.  However, the debt remained on Plaintiff's credit report and was not updated to reflect the dispute at that time. *Id.* at 98:6-13. Defendant's own notes reflect it then began to search for "media" which included a copy of a credit application tying Plaintiff to the account, and that further questions were raised by Defendant regarding who was liable on the disputed account and whether Plaintiff was actually an obligor. *Id.* at 84:19-85:25; 92:20-93:6.

In January 2008, Defendant received notice of Plaintiff's dispute from Trans Union and Experian in the form of ACDV's which stated that Plaintiff disputed ownership of the Unifund account. (Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0071; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079.)  Defendant's response or "investigation" to the receipt of Plaintiff's dispute consisted of matching the information it received from Trans Union and Experian contained in the ACDV's to the

information Unifund had on the disputed account. (Lyons Aff. ¶5, Ex. D, Deposition of Tracy Wagner dated May 14, 2009 ("Wagner Dep.") at 25:2-7.)  There is no evidence that Defendant did anything else whatsoever as part of its investigation, such as locate a signed application or other evidence, even though the collection lawsuit had been dismissed and the account notes dated January 17, 2008 show there was considerable doubt as to whether Plaintiff was really an obligor on the account and that Defendant was trying to track down the application or anything else that would tie Plaintiff to the account.[6]  Defendant simply verified that the account belonged to Plaintiff by merely "parroting" back the very information Plaintiff was disputing without ever looking beyond a few identifiers (name, social security, address).  Unifund's automated responses to both Trans Union and Experian only contained Code 01 for "account information accurate as of date reported" and nothing else. (Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0071; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079); *See Murphy v. Midland Credit Management, Inc.*, 456 F.Supp.2d 1082, (E.D.Mo.2006) (denying summary judgment because a jury could conclude that the defendant knowingly and intentionally failed to take reasonable steps to verify the account's accuracy when the plaintiff disputed she was a joint account holder).

---

[6] *See, for example, Schaffhausen v. Bank of America, N.A.*, 393 F.Supp.2d 853, 859 (D.Minn.2005) (finding inconsistent responses by the data furnisher to inquiries and disputes by the plaintiff raised a genuine issue of material fact with regard to the furnisher's willfulness in failing to comply with the FCRA.)

To make matters worse, Defendant failed to label the account as "disputed by consumer" despite the requirement and opportunity to do so under Section 1681s-2(b). Both of the ACDV's sent by Trans Union and Experian contain fields ("Consumer Compliance Condition" or "CCC") wherein Defendant should have entered the code ("XB") for "disputed." (Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0071; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079; see also Iwanski Dep. 146:11-147:3.) Defendant's employee, Tracy Wagner, who performed the investigation, was not familiar with how to label accounts as disputed on an ACDV and is not familiar with the code utilized to mark it as such to inform the credit reporting agencies of the account's disputed nature. (Wagner Dep. 30:19-31:5.) Defendant has not explained why the account was not marked as disputed at that time or in response to the ACDV's – there is no evidence that Ms. Wagner failed to update it as in dispute because she thought the internal flag from January 17, 2008 would go into effect or that labeling the account as disputed was unnecessary because of the prior flag. Ms. Wagner simply chose not to mark the account as disputed because she was not aware of the process. *See Saunders*, 526 F.3d at 151 (finding reasonable jury could conclude that bank willfully violated the FCRA when it chose to report a debt without reporting the ongoing dispute and denying its motion for remittitur after jury awarded $80,000 in punitive damages); *see Gorman v. Wolpoff & Abramson, LLP.*, 552 F.3d 1008, 1022-23 (following the reasoning applied in *Saunders* and recognizing a cause of action under Section 1681s-2(b) for a furnisher's decision to continue reporting a disputed debt without any notation of the dispute).

Accordingly, Defendant's failure to update as "disputed by consumer" cannot be attributed to any "inadvertent computer error." Defendant's characterization is misleading and nowhere in the deposition excerpts cited by Defendant do the Unifund witnesses attribute the failure to update as "disputed" to a computer error. What happened was not an accident or mistake, rather it was a result of the way Defendant's system is set up and its failure to properly train its employees who respond to disputes. As Ms. Hopkins explained in her deposition, the flag from January 17, 2008 did not go into effect because Unifund received an ACDV in February 2008 based on a dispute lodged by Plaintiff. (Hopkins 144:5-16.) At that time, Defendant flagged the account as "dispute resolved" and verified it as belonging to Plaintiff. This overrode or "negated" Defendant's action from January 17, 2009 marking the account as disputed. *Id.* There is no evidence of any computer glitch or that this was not the intended effect of Defendant's system and its actions in failing to update the account as disputed. Furthermore, Defendant had the opportunity to update the account as "disputed" in the responses it sent to Trans Union and Experian in February 2008, but it did not do so. (Lyons Aff. ¶13, Ex. L, filed under seal, at ZEAN/TU 0071; Lyons Aff. ¶14, Ex. M, filed under seal, at EXPERIAN 0079.)

To this end, a jury could conclude that Defendant Unifund's actions were willful or reckless and accordingly Defendant's Motion for Partial Summary Judgment should be denied.

**IV. PLAINTIFF'S CREDIT DEFAMATION CLAIM IS NOT PREEMPTED**

Unifund claims Plaintiff's state law credit defamation claim is preempted by the FCRA because he has not presented evidence of willful conduct on behalf of Unifund. However, as explained above, Plaintiff has produced sufficient evidence to raise a genuine issue of material fact that Unifund's actions with regard to failing to reasonably investigate Plaintiff's disputes with Trans Union and Experian, and failing to update the tradeline as disputed were in reckless disregard of the duties imposed by the FCRA.

While the FCRA does not define the terms "malice" or "willful" intent as used in 15 U.S.C. § 1681h(e), "the Eighth Circuit has equated the malice or willful intent standard to the *New York Times Co. v. Sullivan* standard that a statement be made with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Gordon v. Greenpoint Credit*, 266 F.Supp.2d 1007, 1013 (S.D. Iowa 2003), *citing Yutesler v. Sears Roebuck & Co.*, 263 F.Supp.2d 1212 (D.Minn.2003) (recognizing defamation in the credit reporting context and finding the FCRA does not necessarily preempt such claims in Minnesota) (*citing Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980) (*quoting New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710(1964). Plaintiff has provided evidence that Unifund's conduct with regard to Plaintiff's disputes in February 2008 was committed in reckless disregard for the truth of the information it communicated to others regarding Plaintiff. Accordingly, Plaintiff's state law claim for defamation is not preempted by Section 1681h(e).

## **CONCLUSION**

Defendant Unifund had an obligation and ample opportunity to rectify Plaintiff's inaccurate credit report and to update the tradeline as "disputed." Since Defendant's conduct was willful, Plaintiff need not have suffered actual damages to recover, but has nonetheless presented evidence from which a jury could reasonably conclude that he did suffer actual damages. A jury could further conclude from the evidence that Defendant Unifund acted with reckless disregard based upon its own recitation of the facts about how Plaintiff's disputes were handled.

For these reasons, Defendant Unifund's Motion for Summary Judgment should be denied in its entirety.

Dated this 7th day of July, 2009.

ATTORNEYS FOR PLAINTIFF

By: s/ Thomas J. Lyons Jr.

**CONSUMER JUSTICE CENTER, P.A**
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #:0249646
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile: (651) 704-0907
tommycjc@aol.com

**LYONS LAW FIRM, P.A.**
Thomas J. Lyons, Esq.
Attorney I.D. #: 65699
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile: (651) 770-5830
tlyons@lyonslawfirm.com