UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jonathan Zean,                                                    Civil No. 08-1091 (DWF/AJB)

                        Plaintiff,

v.                                                                **MEMORANDUM**
                                                                  **OPINION AND ORDER**
Unifund CCR Partners and
Experian Information Solutions, Inc.,

                        Defendants.

---

Thomas J. Lyons, Esq., Lyons Law Firm, P.A., Thomas J. Lyons, Jr., Esq., Consumer Justice Center, PA, counsel for Plaintiff.

Charles F. Webber, Esq., Ellen B. Silverman, Esq., and Christina Rieck Loukas, Esq., Faegre & Benson LLP, counsel for Defendant Unifund CCR Partners.

---

## INTRODUCTION

This matter is before the Court upon a Motion for Partial Summary Judgment brought by Defendant Unifund CCR Partners ("Unifund").[1] Plaintiff Jonathan Zean ("Plaintiff") opposes the motion. For the reasons set forth below, the Court grants Unifund's motion.

---

[1] U.S. Bancorp, doing business as U.S. Bank National Association, is no longer a defendant in this matter, having been dismissed pursuant to a stipulation with Plaintiff. (Doc. Nos. 28, 29.) The parties represented in briefs and at the hearing in this matter that Defendant Experian Information Solutions, Inc. ("Experian") is also likely to be dismissed. This opinion addresses only the claims Plaintiff has asserted against Unifund.

**BACKGROUND**

Plaintiff's suit arises from his efforts to clarify the ownership of and responsibilities related to a credit card issued by U.S. Bank to his brother, Samuel Addo ("Addo"). Plaintiff claims that he came to the United States from Liberia in 2001, with few possessions. Addo offered to make Plaintiff an authorized user of Addo's U.S. Bank issued credit card so that Plaintiff would be able to purchase necessities. Ultimately, Plaintiff did not need the credit card because he obtained employment soon after his arrival. According to Plaintiff, Addo received the credit card but did not give it to Plaintiff and Plaintiff never used it. Addo subsequently filed a bankruptcy case and U.S. Bank sought to collect the balance owed on the credit card from Plaintiff, asserting that Plaintiff was a joint account holder rather than merely an authorized user.[2] Plaintiff disputed this obligation.

U.S. Bank sold the account to Unifund and Unifund began to collect on the debt.[3] In December 2007, Unifund commenced an action in Minnesota state court against Plaintiff for the balance on the credit card. Plaintiff hired an attorney, his counsel in this case, and they notified Unifund that Plaintiff disputed the debt. The record reflects that

---

[2] It appears that no original documentation governing the relationship between the parties regarding this credit card exists. A representative of U.S. Bank testified that the documents would have been destroyed according to U.S. Bank's document retention policy, if they existed. (Aff. of Ellen B. Silverman in Supp. of Unifund's Mot. for Partial Summ. J. ("Silverman Aff.") ¶ 5, Ex. D at 79-80.)

[3] Unifund sent Plaintiff a letter informing him that it has purchased the debt and requesting that he contact them regarding any dispute. Plaintiff believes that he wrote Unifund a responsive letter. Unifund indicates that it has no record of receiving a letter from Plaintiff.

Unifund exchanged missives with its counsel in the debt collection action and that Unifund indicated that it had "marked the debt as disputed." (Hr'g Ex. 2.) Around the same time, Plaintiff notified Experian that he disputed the debt and Experian sent several Consumer Dispute Verification ("CDV") notices to Unifund. In response to the CDVs, Unifund verified the debt to Experian based on a comparison of Plaintiff's personal information to the information it had on record. Unifund, therefore, failed to notify Experian that the debt was disputed. Unifund further indicates that the CDVs essentially overrode the dispute notification in its computer system, which would otherwise have been reported when Unifund sent updates to the credit reporting agencies.

Plaintiff asserts claims against Unifund under the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"), and also asserts a claim for credit defamation. In its motion, Unifund challenges only the FCRA and credit defamation claims.[4]

## DISCUSSION

**I.      Summary Judgment Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the

---

[4]    In a footnote in his responsive memorandum, Plaintiff noted that Unifund had not challenged the FDCPA claims in its motion and requested that the Court grant him summary judgment as to the FDCPA claims *sua sponte*. Unifund contends that it brought its motion regarding only the FCRA claims because Plaintiff's FDCPA claims hinge on disputed issues of material fact, making summary judgment inappropriate. The Court concludes that summary judgment as to the FDCPA claims is not warranted at this time.

3

evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.,* 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

**II.    FCRA**

Though Unifund does not concede that it violated the FCRA, for the purposes of this motion, the Court assumes such a violation occurred when Unifund failed to report the debt as disputed. Nevertheless, Unifund contends that Plaintiff cannot succeed on his FCRA claims because he cannot prove he suffered compensatory damages caused by Unifund. Unifund further asserts that Plaintiff's claim for punitive damages under the FCRA is without merit.

A.     **Compensatory Damages**

The FCRA provides that successful plaintiffs may recover actual damages as a result of a violation. 15 U.S.C. § 1681o(a)(1) (negligent noncompliance); 15 U.S.C. § 1681n(a)(1)(A) (willful noncompliance). Plaintiff concedes that during the time period of his dispute with Unifund he suffered no credit denials and incurred no higher interest rates as a result of Unifund's actions. Rather, Plaintiff claims he has damages for out-of-pocket expenses and also that he suffered emotional distress as a result of Unifund's FCRA violation.

Plaintiff alleges economic damages in the amount of $5,406.03, including expenses for copies and postage, mileage and gas for trips to and from his attorney's office, the value of his time for hours spent filling out forms and consulting his lawyer regarding litigation matters, and his attorney's $5,000 retainer fee. (Aff. of Thomas J. Lyons, Sr. ("Lyons Aff.") ¶ 17, Ex. P at 10.) The term "actual damages" under the FCRA includes out-of-pocket expenses for an attorney incurred by a plaintiff prior to litigation under the FCRA because a consumer should not be required to bear the expense of an attorney to obtain compliance with the law, but the term does not include attorney fees or expenses associated with a plaintiff's FCRA litigation. *Casella v. Equifax Credit Info. Svcs.*, 56 F.3d 469, 474 (2d Cir. 1995); *McKinley v. CSC Credit Svcs., Inc.*, Civil No. 05-2340 ADM/JJG, 2007 WL 1412555 at *6 (D. Minn. May 10, 2007). Plaintiff's out-of-pocket, economic damages are not compensable because they do not arise from Plaintiff's attempts to enforce compliance with the law; rather, these expenses were incurred in connection with the present litigation.

Relief under the FCRA may also include damages for emotional distress, even when no out-of-pocket damages have been sustained. *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir. 1976) (holding that rule providing no recovery for "mere mental pain and anxiety" is inapplicable in FCRA actions); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (holding plaintiffs could recover for emotional distress suffered when their credit reports were unlawfully obtained and their privacy violated based upon testimony regarding how they felt as a result of these acts). Some courts have expressed concern, however, that emotional damages are "easy to manufacture" and have adopted a stricter standard of proof before permitting recovery of damages for emotional distress. *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001); *see also Sloane v. Equifax Info. Svcs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (characterizing emotional distress as "fraught with vagueness and speculation" and "easily susceptible to fictitious and trivial claims") (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996)).

As a result, some circuit courts have applied a rule requiring that, when a plaintiff's testimony is the only evidence of emotional damages, the plaintiff must sufficiently explain the circumstances surrounding his or her emotional injury and may not rely on conclusory statements. *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 361 (6th Cir. 2005); *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005). Another circuit court suggests a more lenient approach, holding in one case that a plaintiff claiming damages due to credit denials for four to five years,

6

along with humiliation and embarrassment as a result of the rejection of his application for credit with a particular vendor, need not state his damages with greater sufficiency, particularly given the "amorphous" nature of emotional distress damages. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n.3 (3d Cir. 1996).

The Eighth Circuit has not specifically addressed the standard to be applied to emotional distress damages. Nevertheless, Unifund contends that Plaintiff cannot recover for his noneconomic, emotional damages because his emotional distress did not manifest itself through physical symptoms. A court in this district has considered this question, noting that such a requirement would "create a standard for recovery of emotional distress damages that is higher than that required by the FCRA." *Graham v. CSC Credit Svcs., Inc.*, 306 F. Supp. 2d 873, 880 (D. Minn. 2004). In *Graham*, the court noted that *Bakker* recognized damages could be awarded based on how plaintiffs "felt when appellants obtained their credit reports and violated their privacy, thereby causing them emotional distress." *Id*. (quoting *Bakker*, 152 F.3d at 1007). The court in *Graham* determined that the plaintiff's testimony regarding frustration, anxiety, and humiliation raised a sufficient issue of fact regarding whether he suffered emotional distress to survive a motion for summary judgment. *Id*. Therefore, a physical manifestation of emotional distress is not always required before a plaintiff may recover.

Even so, the Court concludes that Plaintiff has not put forth sufficient evidence to allow recovery of emotional distress damages under any standard. Plaintiff indicated his emotional distress included:

>lack of concentration, frustration, sleeplessness, affect on my family, not being able to do things regularly as I do, and even, I lost time going to work because I had to sit down to write the letter, try to put things together . . . and it was just something that I couldn't just go through. It was really hard for me.

(Lyons Aff. ¶ 2, Ex. A at 95.) When asked if he suffered any other symptoms of distress Plaintiff answered, "No." (*Id.*)

When asked specifically about his sleeplessness, Plaintiff indicated that it "didn't happen every day, but it happened occasionally," and that it "happened several times." (*Id.* at 96-97.) Plaintiff tied his sleeplessness to anxiety he experienced when he and his wife were planning to apply for credit and explained that, in anticipation of having his credit checked, he would think about his credit problems until he fell asleep late into the night.

Plaintiff also explained he had emotional difficulty because "[w]here I'm from, as a man, you are the bread-winner of the family . . . [y]our family look[s] up to you to provide," and he was not able to obtain credit in order to fulfill that role. (*Id.* at 65.) He stated that his wife blamed him and was frustrated, but also indicated that she understood he had not done anything wrong. (*Id.* at 67, 70.) He testified that he withdrew from his family, but also said that he received comfort from family members. He indicated that he generally smiles at people, but that his daughter asked him, "Daddy, you don't smile these days. What's going on?" (*Id.* at 69.) Plaintiff did not seek assistance from a physician or psychiatrist to help him deal with any of these problems.

The Plaintiff's emotional harm is inconsistent with the level of distress suffered by plaintiffs in many cases where emotional distress damages have been awarded. In

8

*Bakker*, the court found that the plaintiffs showed they suffered emotional distress where an attorney made "multiple requests for credit reports on Dr. Bakker and his daughters [that were] designed and intended to carry on [a] 'vendetta' that [the attorney's] law firm pursued against" them, in connection with which the attorney "intentionally and egregiously threatened Dr. Bakker with loss of his profession, both by the destruction of his name and by forfeiture or suspension of his dental license. [The attorney's] conduct included [making] allegations that Dr. Bakker and his wife had been involved in child molestation matters, allegations that could have had a devastating effect upon their lives even if false." 152 F.3d at 1013. In *Bach*, the plaintiff was the victim of identity theft and suffered an adverse credit determination while attempting to purchase a condominium for her granddaughter, who was to care for the plaintiff after the plaintiff suffered a stroke. 149 Fed. Appx. at 361. The plaintiff testified that as a result of the denial of her mortgage application, she felt "'desperate,' 'ashamed,' 'embarrassed,' and 'damn mad,'" and the court considered it relevant that the plaintiff was particularly vulnerable due to her stroke. *Id*. at 361-62. In *Sloane*, the court concluded the plaintiff produced sufficient evidence of emotional distress when the plaintiff, an identity theft victim, and her husband testified to the deterioration of their marriage due to the resulting credit problems, including that they fought, slept apart and contemplated divorce, that the plaintiff sought to use a marriage counselor, that plaintiff was frequently unable to sleep and, as a result, was so tired that she nodded off while driving. 510 F.3d at 501.

The Plaintiff here testified to trouble sleeping that "happened several times," and that he did not feel like smiling. Plaintiff also made inconsistent statements about the

9

impact of the credit problems on his relationships with his wife and other family members.  This evidence is insufficient to show Plaintiff suffered compensable emotional distress.  Further, the Plaintiff's testimony lacks the specific, substantive detail that is necessary to show emotional distress.[5]  For instance, when Plaintiff was asked about how his emotional distress impacted his physical ability he responded:

> Socializing with other people.  It's like moving around, interacting with people.  But because I'm drained because of what is going on, I don't feel that – I don't really feel good what's going on with me.  I sit down and think about what's going on . . . .

(Lyons Aff. ¶ 2, Ex. A at 68.)  While Plaintiff's deposition contains more extensive statements about his experience than those recounted here, much of the information Plaintiff provided is cumulative; the mere repetition of certain information without additional substantive detail does not increase its importance in determining whether Plaintiff's harm was a compensable injury.

Plaintiff urges the Court to examine *Murphy v. Midland Credit Management, Inc.*, arguing that the factual circumstances presented here are similar to the evidence of emotional distress produced in that case.  456 F. Supp. 2d 1082 (E.D. Mo. 2006).  In *Murphy*, however, the plaintiff, her grandson and her neighbor testified to the plaintiff's emotional distress; stating that the plaintiff would pace through the house appearing "distraught"; the plaintiff experienced headaches, as well as stomach and chest pain; when the plaintiff got her credit reports she would yell, scream and turn red; and the

---

[5]   The Court notes that Plaintiff's testimony regarding emotional distress is almost identical to that of the plaintiff in *Konter v. CSC Credit Svcs., Inc.*, 606 F. Supp. 2d 960 (W.D. Wis. 2009), a case in which Plaintiff's counsel also participated and where such evidence was found to be insufficient to justify emotional distress damages.

plaintiff was always a "nervous wreck," looked tired, had problems sleeping and experienced weight loss. *Id.* at 1093. This evidence is substantially more detailed than that adduced by Plaintiff.

Plaintiff attempts to supplement his deposition testimony with his own affidavit, as well as affidavits from Addo and Plaintiff's wife, Gloria Zean, attesting to the emotional distress he suffered. (Lyons Aff. ¶¶ 6-8, Exs. E, F, G.) Statements in these affidavits, however, contradict several aspects of Plaintiff's deposition testimony. For instance, though Plaintiff testified that he had difficulty sleeping on occasion and that it happened several times, his affidavit states that he lost sleep "on many occasions." (*Id.* at ¶6, Ex. E at ¶ 7.) In his deposition he testified his sleeplessness occurred when he and his wife were planning to request credit, but his affidavit states that his sleeplessness occurred after Unifund failed to remove the debt from his credit report. These affidavits are not merely supplementary statements that flesh out unexplored areas or explain contradictions within deposition testimony. Instead, these affidavits appear to be an attempt to reshape the record in Plaintiff's favor. Contradictory supplemental affidavits such as these are not permitted, however, because authorizing such a tactic would allow the disavowal of sworn testimony in order to create factual conflicts and avoid summary judgment. *Popoalii v. Corr. Med. Svcs.*, 512 F.3d 488, 498 (8th Cir. 2008). To the extent that the depositions do not contradict Plaintiff's testimony, they still fail to establish that Plaintiff suffered the kind of emotional harm that courts have recognized as compensable.

Further, even if Plaintiff had produced sufficient evidence to support his claims of emotional distress, his claims still fail because he has not shown that his damages result

from Unifund's conduct.  The most conspicuous target of Plaintiff's claims was U.S. Bank.  Plaintiff explained in his deposition that he felt U.S. Bank had intentionally misrepresented his responsibility regarding the credit card debt and had willfully failed to correct it despite his notification to U.S. Bank that it was not his obligation, causing him credit denials.  Though Plaintiff generally mentioned in his deposition that he also believed Unifund had intentionally failed in its duties, Plaintiff did not similarly draw a specific connection between his distress and Unifund's actions.

Indeed, the record contains information about only one negative credit-related experience the Plaintiff had during the time Unifund owned the credit card debt.  Plaintiff testified that he applied for a job with Farmers Insurance in June or July of 2008, for which he underwent a credit check that revealed the U.S. Bank credit card debt.[6]  Plaintiff indicated that he was embarrassed by this and obtained a letter from his attorney explaining the problem.  Plaintiff testified that he was hired for the job temporarily, notwithstanding the credit report, but that he chose not to take the job because he would not have been paid during an initial six-month training period for the position.

In *Casella*, the court held that the plaintiff's evidence of emotional distress was insufficient where plaintiff produced his own affidavit along with that of his companion, attesting to feelings of "worry, anxiety, and depression" while dealing with his credit report, and his fear that his negative credit report might impact his application to a volunteer fire department, though ultimately it did not.  56 F.2d at 474.  The Second

---

[6]   Plaintiff's affidavit indicates that this occurred in May 2008.  (Lyons Aff. ¶ 6, Ex. E at ¶ 9.)

Circuit held that the plaintiff's "argument boiled down to the bare contention that he was entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report," but the plaintiff failed to establish a link between his concerns and the defendants' actions. *Id*. at 475.  Similarly, the Plaintiff in this case may have, understandably, felt some general anxiety about his credit but he has not shown that Unifund's actions were the cause of any specific harm.

Plaintiff contends that his deposition does not truly reflect the emotional damages attributable to Unifund because the attorney taking the deposition steered the Plaintiff to discuss, primarily, his claims against U.S. Bank.  This is not an accurate representation of the record.  Plaintiff was asked numerous open-ended questions, and in some instances, single answers that Plaintiff gave span several pages of the deposition transcript.  Therefore, it appears Plaintiff was allowed to speak his mind with respect to his claims and was not directed in a particular way by the attorney.  Further, Plaintiff's counsel asked no clarifying questions at the end of the deposition to correct any confusion about the harm caused by any of the defendants and it does not appear that Plaintiff made any changes following receipt of the transcript.  The Court cannot conclude that Plaintiff's deposition unfairly misrepresents Plaintiff's evidence.  Therefore, the Court concludes that Plaintiff has not shown he suffered compensable emotional distress caused by Unifund.

      **B.**    **Punitive Damages**

Punitive damages are available under the FCRA in cases of willful noncompliance.  15 U.S.C. § 1681n(a)(2) (providing for an award of "such amount of

punitive damages as the court may allow"). Unifund contends that Plaintiff has not met this standard as to its conduct. The Court agrees.

In *Safeco Insurance Company of America v. Burr*, the Supreme Court considered the type of conduct that could be considered a willful violation under the FCRA and concluded that the term "willful" includes knowing violations and reckless disregard. 551 U.S. 47, 52, 59 (2007). The Supreme Court further characterized reckless conduct as action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836 (1994)).

The record reflects that Plaintiff's counsel notified Unifund's collection law firm that Plaintiff disputed the debt after Unifund commenced its suit against Plaintiff in state court. Plaintiff introduced an exhibit at the hearing in this matter showing Unifund's response to this notification. (Hr'g Ex. 2.) The response includes the statement on January 17, 2008 that "[i]t doesn't look like [Unifund has] ever received any type of dispute on this file." (*Id.*) The same day, the notation "Dispute" was entered in the record. (*Id.*) In connection with a discussion about the file a few weeks later, on February 26, 2008, Unifund further noted that the account had been marked as disputed. (*Id.*) The Plaintiff's account was not reported as disputed on the next reporting date because Unifund's subsequent receipt and response to the CDVs re-set Unifund's system. When the problem was discovered, the account was reported accurately. This may be negligent conduct, and an aspect of its internal operations that Unifund should certainly

remedy, but does not constitute knowing or reckless conduct constituting willful noncompliance.[7]

Plaintiff has cited the case of *Saunders v. Branch Banking and Trust Company of Virginia*, 526 F.3d 142 (4th Cir. 2008). Plaintiff contends that the reasoning in *Saunders* supports presenting this matter to a jury because Unifund knew Plaintiff disputed the debt and did not report it, showing that Unifund knowingly violated the FCRA. The facts of the two cases, however, are quite dissimilar. The defendant in *Saunders* failed to properly record the plaintiff's loan for a vehicle on its records. The plaintiff notified the defendant several times of his own obligation but was repeatedly told by the defendant that he owed no money, and the plaintiff was unable to make any payments on the loan because he had no payment book or loan number to reference with his payment. When the defendant finally recorded the debt, it sent the plaintiff a notice that he was "seriously delinquent" and demanded that he pay late fees and other charges. *Saunders*, 526 F.3d at 145. The plaintiff stated he would make payments on the loan, but refused to pay penalties or late fees. The defendant subsequently reported the plaintiff's debt, but did not indicate that the debt was disputed, and even as the case went to trial had not remedied the problem. The court in *Saunders* determined that a reasonable jury could conclude that the defendant knowingly and willfully chose to report the debt without reporting the dispute.

---

[7] The Court notes that Unifund is now aware of this problem in its reporting system and, if it were to proceed without fixing this problem, its subsequent conduct could be considered reckless disregard in future cases.

In contrast, in this case Unifund actually did mark the debt as disputed on its internal system so that it would be reported as disputed as soon as it became aware of the dispute.  Without excusing Unifund's failure to report the dispute, the Court concludes that the evidence does not show that Unifund knowingly and recklessly failed to report the debt.  Therefore, the Plaintiff may not proceed on his punitive damages claims.

### III.   Credit Defamation

Unifund asserts that Plaintiff cannot maintain a claim for credit defamation because Minnesota does not recognize such a cause of action and, even if it did, such a cause of action would be preempted by the FCRA.  The FCRA provides that, except as otherwise provided,

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  Plaintiff contends that his claims fall within the exception because Unifund provided false information with malice or willful intent to injure.  Plaintiff urges this Court to hold that malice and willful intent to injure under the FCRA is akin to reckless disregard as to the truth or falsity of a statement, based on the standard articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  There is no evidence

16

in the record that Unifund's failure to notify the credit reporting bureaus that Plaintiff disputed the credit card debt was motivated by malice or willful intent to injure the Plaintiff, or even by reckless disregard. As noted above, while Unifund erred and its error may constitute negligence, such an error does not fall within the exception to preemption in 15 U.S.C. § 1681h(e).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Unifund CCR Partners Motion for Partial Summary Judgment (Doc. No. 26) is **GRANTED**.

2. Counts II and IV of the Plaintiff's Complaint (Doc. No. 1) as to Defendant Unifund CCR Partners are **DISMISSED WITH PREJUDICE**.

Dated:  August 10, 2009         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge